## No. 15,502.

### FERCH *v.* HANSEN ET AL.
(174 P. [2d] 719)

Decided November 12, 1946.  Rehearing denied December 2, 1946.

Mr. B. F. REED, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, Mr. JAMES A. MARSH, Mr. RALPH L. CARR, for defendants in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A CLASS suit by a citizen and resident taxpayer (in behalf of himself and all other like taxpayers) of defendant City and County. of Denver, wherein he asks that an "alleged contract between the City and County of Denver and the defendant Sam Hansen, relating to the collection and removal of garbage, as originally made and as subsequently extended, renewed or otherwise continued as being in force, and as it purports to exist today and to continue into the future, be held, adjudged and decreed to be wholly null and void ab initio. That the defendant Sam Hansen be permanently enjoined from selling and disposing of the garbage as it accumulates in said city and county from day to day, and that he be ordered to account for and pay over to said City and County of Denver all moneys heretofore received by him from said City and County of Denver pursuant to said purported contract; that he likewise be held to account to said City and County of Denver, and pay over, all moneys heretofore collected and received by him from the sale of the garbage of said City and County of Denver; that the plaintiff, in his own individual right, and in behalf of all others similarly situated, have such other, further and general relief as may be deemed just and equitable, together with costs." The parties defendant, appearing separately in that behalf, filed identical motions to dismiss, challenging the sufficiency of the allegations of the complaint. The motions were sustained, and, on plaintiff's announcement that he would stand upon the complaint, judgment of dismissal of the cause, with costs, was entered. Since, in the circumstances appearing, the rule is that presumption of

verity attends all the well-pleaded facts of the complaint, we set that pleading forth in extenso. It reads as follows:

"1. That the plaintiff is a bona fide resident, citizen and taxpayer of the City and County of Denver, in the State of Colorado, and that said City and County of Denver is a municipal corporation organized and existing under and by virtue of the constitution and laws of the State of Colorado.

"2. That the plaintiff brings this action for and on behalf of himself, and in behalf of all other taxpayers similarly situated.

"3. That at all times herein mentioned there has existed, and now exists, in full force and effect in said City and County of Denver, a certain ordinance designed and adopted to facilitate and regulate the collection, removal and disposal of the garbage as it accumulates from time to time in said City and County of Denver, and that said ordinance is known as Chapter XXXVI, Article X, Sections 924 to 935 inclusive of the Municipal Code of said City and County of Denver, and that a copy of pertinent sections of said ordinance is hereto attached, marked Exhibit A, and by reference made a part of this complaint; that said ordinance, in full force and effect, and in all substantial provisions thereof, has existed continuously at all times mentioned herein.

"4. That heretofore, many years ago, the said City and County of Denver, acting by and through its duly constituted and authorized officials and agents, did make, execute and deliver to the said Sam Hansen an instrument in writing purporting to be a contract whereby the defendant Sam Hansen pretended to acquire, and said City and County of Denver pretended to sell, assign and transfer to him, the ownership of all garbage as it accumulated in said City and County, and granted to said defendant the exclusive right, for his own benefit, to remove and dispose of the same, and as a further consideration for his supposed services in that behalf

the said City and County of Denver agreed in said instrument to pay to said defendant a large sum of money annually, payable at intervals as in said instrument provided; that said instrument as originally made was for a term of years not exceeding four years, and at the expiration of said term the same was renewed, continued or extended for another term of years, and has since been repeatedly extended, continued or renewed for successive terms of not more than four years each, and that the said defendant Sam Hansen and the said City and County of Denver, acting by and through its said authorized officials and agents, now pretend and contend that said instrument is in full force and effect and will continue to be in full force and effect for years to come, and that the same has always been in full force and effect since originally entered into.

"5. That in said instrument it has been provided from time to time in the past that the said City and County of Denver should pay to the said Sam Hansen a large sum of money, annually, as a part of the consideration due him for his supposed services in removing and disposing of said garbage, to-wit, from as much as $17,000.00 per year to as much as $28,000.00 per year, and that the said City and County of Denver, acting by and through its said officials and agents, has heretofore, throughout all of said years and up to the present time, paid to the said Sam Hansen said large sums of money, in varying amounts, annually, in addition to transferring to him the ownership of all of said garbage, which garbage is, and always has been, a valuable asset of the said City and County of Denver, worth much more to said City and County of Denver than the reasonable value of all services required for the removal and disposal of the same in accordance with the provisions of said city ordinance.

"6. That the defendant Sam Hansen never at any time was, and he is not now, equipped for the work of collecting and removing said garbage beyond the limits of

said municipality, and has never at any time in the past attempted to collect or remove the same, and he does not now intend to remove the same or any portion thereof in the future. That in years past he devised and put into effect a plan or scheme which is still in full force and effect and will continue to remain in force and effect in the future unless he shall be restrained therefrom by the court, whereby the said City and County of Denver is divided by him into numerous garbage districts or areas, identified and separated by designated boundary lines of the public streets and alleys of said municipality, and he has been and now is engaged in the business of selling the garbage that accumulates in said districts to divers individuals who reside in the near vicinity of said City and County of Denver and who operate farms and follow the business of raising and feeding hogs for the market; that in consideration for said garbage to be used as hog feed by the purchasers thereof, the said individuals are required by the said Sam Hansen to remove said garbage from their several and respective garbage districts in their own garbage trucks which are owned, equipped and maintained by them for that purpose, and in addition thereto the said individuals, purchasers of said garbage from the said Sam Hansen, are required by him to pay, and they do pay to the said Sam Hansen, annually, a large sum of money in the aggregate, to-wit, as much as $25,000.00 per year, as this plaintiff is informed and believes and therefore states the fact to be; that the plaintiff does not know and cannot state the amount of money heretofore paid to the defendant Sam Hansen by the said City and County of Denver and by the said purchasers of said garbage, as aforesaid, but that the aggregate of all sums so paid to said defendant is in the amount of many hundreds of thousands of dollars over the period of more than twenty years in the past, all of which has been a wrongful and needless waste of the funds of said municipality and its taxpayers.

"7. Plaintiff further alleges that said purported contract between the City and County of Denver and the defendant Sam Hansen, and each and every of the renewals and extensions thereof, as aforesaid, was and is illegal, unconscionable and void from the beginning, and without any force or effect, for the following reasons, to-wit:

"(a) That no advertisement in due form for proposals to enter into said contract or any of the various renewals and extensions thereof was ever at any time had, or made public, as required by the provisions of Section 927 of said ordinance.

"(b) That neither the said original contract nor any of the said extensions and renewals thereof was ever submitted to open or competitive bidding, as required by the provisions of Section 927 of said ordinance.

"(c) That the effect of said transaction as originally entered into and as since carried out and continued, between the said City and County of Denver and the said defendant Sam Hansen, was and is to give and grant unto said defendant Sam Hansen, in violation of said ordinance, the exclusive right, over a long and indefinite period of years, to receive annually from said City and County of Denver a large sum of the taxpayers' moneys, for which he is not required to give, and does not give, any appreciable or commensurable service or other valuable consideration to the said City and County of Denver.

"(d) That under the provisions of Section 927 of said ordinance it is unlawful to dispose of said garbage for hog feed until the same shall have been thoroughly sterilized by steam heat, or its use as hog feed carefully inspected, and fed under the supervision of a licensed veterinarian; and the cost of such sterilization and inspection and supervision is required by said ordinance to be borne and paid by the party who contracts for the removal of said garbage; that the defendant Sam Hansen has consistently and wholly ignored and violated said requirements of said ordinance, and said purported con-

tract does not expressly require that he shall comply with said requirements.

"(e) That Section 928 of said ordinance expressly provides that before any such contract shall be in force the contractor shall enter into a bond, with sureties to be approved by the said City and County of Denver, for the faithful performance of the contract and 'a complete compliance with all the ordinances of the City and County of Denver'; that the defendant Sam Hansen, at all times purporting to be the contractor for the removal of the city garbage, and at all times considered and treated by the officials and agents of said city and county as being such contractor, has never, until recently, throughout all of the many years in the past, furnished or offered to furnish any such bond, and has never until recently been required to furnish any such bond, all in violation of the requirements of said ordinance.

"(f) That, as a matter of common knowledge, the garbage that accumulates continuously in said City and County of Denver constitutes a valuable asset and source of revenue to which said City and County of Denver alone is entitled; that the matter of the removal of said garbage, and the disposition that it is made of it by said defendant Sam Hansen, as hereinbefore explained, is a continuing and wrongful waste and misapplication of the valuable property of said City and County of Denver, all at the expense of the taxpayers of said municipality; that the said defendant Sam Hansen, without authority in law, and in violation of the provisions of said ordinance, has wrongfully taken and converted to his own use and benefit, the proceeds derived from said garbage throughout a long term of years in the past, and amounting to many thousands of dollars, and that he will continue so to do in the future unless restrained by the court, all to the great damage and loss of said City and County of Denver and its taxpayers.

"(g) That said purported contract and each of its several extensions, renewals and continuations, as afore-

said, is void from its inception, and gave no right to the defendant Sam Hansen to remove any of the city's garbage or to collect or receive the proceeds thereof, or to receive any of the funds of said City and County of Denver, for the further reason that the making of said contract as the same has been made and extended in the past was beyond the power of the officials and agents of said City and County of Denver who are by law charged with the duty of executing such contracts, and contrary to the provisions of said ordinance, in the particulars hereinbefore specified.

"(h) That the said City and County of Denver was and is without the power or authority to become bounden and obligated to the defendant Sam Hansen by said purported contract for the reason that said instrument provides for the payment by said City and County of Denver of a large sum of money annually to the said Sam Hansen, in addition to transferring to said defendant the ownership and benefits of said garbage, in violation of said ordinance which, in effect, prohibits such money payments on the part of the City and County of Denver if any responsible party can be obtained to remove said garbage without such money payments to be made by said City and County of Denver, and the plaintiff alleges that such responsible parties have been available at all times herein mentioned, who would and could have removed and disposed of said garbage in the manner required by ordinance, without consideration from said City and County of Denver other than the right to make use of said garbage for hog feed.

"8. That the said City and County of Denver, through its duly constituted officials, officers and agents, as well as all of said officials and agents, have for many years past well known all of the material facts and matters herein alleged and set forth, and have wholly failed and neglected to take any appropriate action on behalf of said City and County of Denver, or in their several official capacities, to prevent the further waste and ille-

gal expenditure of the funds of said municipality and its taxpayers by asserting or refusing to recognize the invalidity of said garbage contract, and have wholly failed and neglected to take any action for the purpose of recovering from the defendant Sam Hansen the large sums of money heretofore so wrongfully and illegally paid to him pursuant to said void contract and its said extensions and renewals, as aforesaid; that the said City and County of Denver and all of its officials charged with the duty of executing and approving like contracts on the part of said municipality, have long treated and considered said purported contract with the said Sam Hansen as being a valid and binding obligation on the part of said municipality, and they do now consider the same as a valid and subsisting agreement, binding upon said City and County of Denver and its taxpayers, and that a demand upon said City and County of Denver and its duly authorized and responsible officials and agents to bring this action, or any other action designed to afford the relief herein prayed, would be wholly futile and unavailing.

"9. That plaintiff has only recently become aware of the material facts herein alleged and set forth, and since acquiring knowledge concerning the same he has acted with due and reasonable diligence and with all convenient speed in instituting this suit."

Plaintiff asks relief as hereinbefore set out. The ordinance of plaintiff's chief reliance, attached to the complaint as an exhibit, reads as follows:
"*Exhibit A.*

"Chapter XXXVI, Article X, Municipal Code of the year 1927.

"Section 924. No person shall vend, or attempt to vend, dispose of any fruit, vegetable or other article of food that may be decayed or partially rotten, or that may have been taken from any barrel, box or other receptacle for the same in any alley, street or other place."

"Section 925. In order to protect the health of the inhabitants of the City and County of Denver all garbage must be removed beyond the city limits to such a distance as the manager of health and charity may, from time to time, direct. The said manager of health and charity shall have power to prescribe such rules as he may deem proper, not inconsistent with the charter and ordinances, to govern the manner and time for the collection and removal of such garbage."

"Section 926. The word garbage as herein used is intended to mean all refuse, animal or vegetable matter, and all stale or unsound fruit, vegetables, bread, fish, meat and other food products not fit for human food. All carts or vehicles used for the collection of garbage shall have the words 'Garbage Wagon' plainly printed thereon in such letters as to be legible at a distance of at least eighty feet, and all garbage wagons shall be thoroughly cleaned, and such wagons and the drivers thereof and the owners shall, as to such garbage business, be under the supervision of the manager of health and charity."

"Section 927. In case it shall be deemed advisable and to the advantage of the City and County of Denver by the manager of health and charity, he may enter into a contract with some responsible person, firm or corporation for the removal and disposition beyond the limits of the City and County of Denver of all of the garbage of said city and county; such contract shall be in writing and in the name of the City and County of Denver and shall be signed by the mayor and attested by the clerk and approved by the manager of health and charity, and shall be made for such time and upon such terms and conditions as the manager of health and charity may deem for the best advantage of said city and county; *Provided,* said contract shall be entered into without compensation or pay other than said garbage from the City and County of Denver, and if a contract cannot be made with a responsible person, firm or cor-

poration without pay or compensation from the City and County of Denver, other than said garbage, then said contract shall only be made after due advertisement for proposals on the same and the contract to be awarded to the lowest responsible bidder, the manager of health and charity to have the right to reject any and all bids.

"*Provided,* that any contract entered into by the City and County of Denver shall require the person, firm or corporation entering into said contract where garbage is to be disposed of by feeding to hogs, to either heat said garbage with live steam to 212 degrees Fahrenheit, at his or their own expense until sterilized before using said garbage for hog food, or to feed said garbage to said hogs under the inspection of a licensed veterinarian in good standing. The personnel of said veterinarian to be approved by the manager of health and charity. The said veterinarian to receive his remuneration from the garbage contractor or contractors. The said veterinarian to make frequent inspections of the hogs and ranches of the contractors, and make a written report once a month of the result of his inspections and supervision to the manager of health and charity; also a copy of said report shall be mailed to the office of the state board of health and one to the state veterinarian.

"Section 928. No contract for which the city must pay shall be entered into, which by its terms extends beyond the period of four years, except that the said contract may contain an option of renewal on behalf of the city for the period of another four years.

"*And provided further,* that before any such contract so executed shall be in force and binding upon the City and County of Denver, the contractor named therein shall execute a bond to the City and County of Denver in the sum of five thousand dollars ($5,000), with sureties in each case to be approved by the manager of health and charity, the said bond to be conditioned for the full and faithful and punctual performance of all the agreements and covenants in said contract and for

a complete compliance with all the ordinances of the City and County of Denver.

\* \* \*

"Section ·933. Any person, firm or corporation violating or neglecting or refusing to comply with any regulation, requirement or provision of this ordinance, or rule or regulation of said manager of health and charity, shall, upon conviction, thereof, be fined in a sum not less than $10.00 nor more than $200.00.

\* \* \*

"Section 935. Any person who shall violate any provision of this article where a definite penalty is not otherwise provided shall, upon conviction, be fined in a sum not less than five nor more than one hundred dollars for each offense."

The ordinance of plaintiff's chief reliance is bottomed on the theory that garbage is of material value, for which there is an ever present and continuing demand; that, generally, and assuredly in relation to the never ceasing accumulations thereof in Denver, garbage may be sold to responsible parties, not only at a price that will discharge the cost of gathering and disposal thereof, but probably at one that will enable the city to cover a considerable balance into its treasury. Up to the point where the cost of satisfactory disposition of the garbage will be met by sale thereof, the ordinance vests in the manager of health and charity authority to contract in relation thereto as advised; but, "if a contract cannot be made with a responsible person, firm or corporation without pay or compensation from the City and County of Denver other than said garbage," reads the ordinance, "then said contract shall only be made after due advertisement for proposals on the same and the contract to be awarded to the lowest responsible bidder, the manager of health and charity to have the right to reject any and all bids." The complaint alleges not only that in awarding the contracts to Hansen, the

manager of health and charity acted in utter disregard of the ordinance, and assumed not only to bind the city to pay said Hansen thousands of dollars per year, but, in addition thereto transferred to him title to all of said garbage, which, as is further alleged, he resells for additional thousands of dollars per year. Also, that those who pay Hansen for the garbage collect and dispose thereof in their own trucks, wholly at their own expense. In other words, employing the terminology of disciples of Thespis, the theory of the complaint is, that, the cast for the play is complete without Hansen, and, therefore, money paid to him in the first instance should have been saved to the city, and the money the other actors in the drama are paying to Hansen should be paid to the city; hence further allegation is made to the effect that with proper attention and purpose to serve the city, the manager of health and charity might himself arrange for satisfactory disposal of the city garbage with the identical, or like, men, on terms that would work a saving of all that the city pays to Hansen, and in addition thereto enrich the city to the extent that Hansen reaps from the resale of the garbage. That the manager of health and charity does not pay heed to the ordinance, is alleged, which, for purposes here, is admitted. In such situation, we cannot think the allegations of the complaint fall short of the legal requirements. Indeed, the record viewed solely in that light, defendants do not particularly question that premise.

■ But, they say, the ordinance conflicts with provisions of the city charter, pursuant to which, as said, the manager of health and charity has acted in relation to the matters involved, and, therefore, it is inapplicable, if not void, which is urged. The charter provisions invoked by defendants, arranged and italicized by their counsel, read as follows: "Section 118. (Section 5.) There shall be, and hereby is, created a department of health and charity, which shall have full charge and control of the health department of the city; * * *. The

manager of health and charity shall be the officer in full charge and control of said department * * *. Section 119. (Section 106.) He shall have control of the city and county hospitals, the Steele Memorial hospital, and shall provide, maintain and have charge of a morgue. He shall attend the sick in jails, houses of detention, and care for and direct the admission and discharge of patients at the city and county farm. He shall have the sanitary supervision of all institutions of the city and county, including jails, houses of detention, schoolhouses and public buildings; of the disposition of the dead; of the plumbing and drainage and sewerage of buildings; of markets and of all matters pertaining to the preservation and protection of the lives and health of the people. He shall, at least quarterly, visit every institution of the city and county, private or public, maintained for the care of the sick, injured, indigent, insane or minors. *He shall have control of the removal and disposition of all garbage, offal and other offensive substances, and may enter into such time contracts for the removal and disposition of the same as in his judgment he may deem to be to the best interests of the city and county and to the health and comfort of the inhabitants of the same."*

The quoted charter provisions vest much power in the manager of health and charity, but whether in the discharge of the duties thus committed to his care, the legislative branch of the city government is powerless to require the observance of what it conceives to be wholesome safeguards, in manner of the ordinance here, we are inclined to doubt. The ordinance does not eliminate the right of decision which the charter vests in the manager of health and charity, but it requires, nevertheless, that in contracting for the collection and disposal of garbage, the commercial value thereof shall be taken into consideration. Why the manager should wish to ignore that factor is not understandable. According to the allegations of plaintiff, the value of the garbage

more than equals the expense involved in its disposal. That one fact in mind, and it is not denied, to the extent that defendant Hansen is paid other than by transfer of the garbage to him, the city is unfairly burdened. The ordinance, as our study convinces, is wholesome, and, reasonably, as we think, should be regarded by the manager of health and charity with favor. It is calculated to fortify that official as he busies himself in performing one of his major duties. If, and it is so alleged, there are responsible persons, who, in exchange for title thereto, will bear the expense and do the work involved in the collection and disposition of the garbage of the city (perhaps pay the city a bonus besides), the manager involved, proceeding in accordance with the provisions of the ordinance, will not suffer impairment of authority vested by the charter. Stated otherwise, the charter and ordinance, so far as they affect the situation here, are not in conflict, and neither may be ignored. We think plaintiff has stated a cause of action.

May the suit be maintained by a taxpayer? We are persuaded that the answer should be in the affirmative. The allegations make clear that the municipality, as such, does not purpose, nor through the years has it purposed, to proceed on the theory that illegality attends the contracts involved, or any of them, but, on the contrary, by its active opposition to this suit, below and here, it unquestionably makes common cause with defendant Hansen, the contract beneficiary. Considering plaintiff's grave allegations, the manifest attitude of the city itself in relation thereto, the potential consequences involved, and the circumstances generally, we may not, becomingly, as we are persuaded, give countenance to a judgment that precludes judicial inquiry in the premises. Const. Art. II, §6. The taxpayer here, proceeding at his own expense, and at the risk of judicial visitation of burdens incident to failure, disinterestedly prays recovery in behalf of defendant city, that is to say, for all taxpayers.

Let the judgment be reversed and the cause remanded, with directions to the trial court to overrule the motions to dismiss, require defendants to answer, and otherwise to proceed in due course.

MR. JUSTICE BURKE and MR. JUSTICE ALTER concur.

MR. JUSTICE JACKSON and MR. JUSTICE STONE concur specially.

MR. CHIEF JUSTICE KNOUS and MR. JUSTICE BAKKE, not having heard the oral argument, do not participate.

MR. JUSTICE STONE specially concurring.

Without expressing any opinion on the question of whether the ordinance set out in the complaint is in conflict with the city charter, I think a cause of action is stated in the complaint, regardless of the validity of the ordinance, and regardless of whether, under the cause pleaded, plaintiff is entitled to the relief which he seeks.

While the discretion of municipal officers is not subject to judicial control, gross abuse of such discretion and deliberate waste of city funds, as here charged, are not immune to inquiry and, if established, appropriate relief should be granted. Where such charges are made, it is a right of the people and to the advantage of faithful officials that the doors of the courts be open for investigation and any resulting necessary accounting by public servants as to their stewardship; nevertheless, upon a hearing of such charges judicial tribunals will be slow to interfere with the action of legally established municipal bodies unless fraud or abuse of discretion clearly appear.

I am authorized to state that Mr. Justice Jackson joins in this concurring opinion.