**DECIBEL CREDIT UNION,**
**Plaintiff–Appellee,**

v.

**PUEBLO BANK & TRUST COMPANY,**
**Defendant–Appellant.**

**No. 98CA2548.**

Colorado Court of Appeals,
Div. III.

Feb. 3, 2000.

James R. Gerler, P.C., James R. Gerler, Pueblo, Colorado, for Plaintiff–Appellee.

Altman, Keilbach, Lytle, Parlapiano & Ware, P.C., James S. Oliver, W. David Lytle, Pueblo, Colorado, for Defendant–Appellant.

Opinion by Judge RULAND.

This case requires us to address which party must bear the loss for amounts paid on forged checks. Defendant, Pueblo Bank & Trust Company, appeals from the summary judgment awarded to plaintiff, Decibel Credit Union. We reverse and remand the case for further proceedings.

A thief stole blank checks furnished by Decibel to one of its checking account customers. During a period of approximately 40 days, the thief forged the signature of the customer on a series of 14 checks totaling $2,350. Each of the checks was cashed at Pueblo Bank where the thief had a bank account.

On some of the days during the 40–day period, the thief cashed more than one check per day. At no time during this period did either the thief's checking account or his ready reserve account have sufficient funds to cover the checks that were being cashed.

Pueblo Bank processed all 14 checks through the Federal Reserve System to Decibel, and Decibel timely paid the checks. Decibel's customer discovered the forgeries when he received his bank statement. The customer immediately notified Decibel. Decibel then made demand upon Pueblo Bank for reimbursement. Pueblo Bank declined, and this litigation followed.

After the complaint was filed, both parties filed motions for summary judgment. Based

upon those submissions, the trial court entered judgment for Decibel.

First, the trial court concluded that Decibel had given timely notice to Pueblo Bank as soon as the forgery was discovered by its account holder. Next, the trial court determined that in submitting the checks to Decibel for payment, Pueblo Bank had triggered its responsibility under the Colorado version of the Uniform Commercial Code for both presentment and transfer warranties. The court finally determined that a breach of these warranties had occurred and that Decibel was entitled to reimbursement. This appeal followed.

## I.

For purposes of the Colorado Uniform Commercial Code, Decibel was the "drawee" bank in these transactions. *See* § 4–3–103(2), C.R.S.1999. Pueblo Bank was the "presenting bank." *See* § 4–4–105(6), C.R.S. 1999; *see also* § 4–3–501(a), C.R.S.1999.

■ The applicable standards of appellate review for this case are well established. Entry of summary judgment is proper only if there are no disputed issues of material fact, and the only issues for decision present legal questions. *See Kaiser Foundation Health Plan v. Sharp*, 741 P.2d 714 (Colo.1987). A material fact is one that will affect the outcome of the case. *See Peterson v. Halsted*, 829 P.2d 373 (Colo.1992).

■ The parties also agree on most of the legal principles from the Uniform Commercial Code that apply. Generally, a drawee bank is liable to its checking account customer for payment of a check on which the customer's signature has been forged. *See* § 4–3–418, C.R.S.1999; *Travelers Indemnity Company v. Stedman*, 895 F.Supp. 742 (E.D.Pa.1995). Further, when the drawee bank honors the forged instrument, the payment is deemed final for a person who or an entity which takes the instrument in good faith and for value. *See Bank of Glen Burnie v. Loyola Federal Savings Bank*, 336 Md. 331, 648 A.2d 453 (1994); *North Carolina National Bank v. Hammond*, 298 N.C. 703, 709, 260 S.E.2d 617, 622 n. 1 (1979).

However, when appropriate and timely notice of the forgery is given to a presenting bank by the drawee bank along with its statement of intent not to honor the instrument, the drawee bank can in some circumstances shift liability to the presenting bank. The parties disagree on what type of notice is required under the Code for this purpose. Nevertheless, it is unnecessary to decide this issue because they agree that Decibel's notice was sufficient if either presentment or transfer warranties were given by Pueblo Bank when it returned the checks to Decibel through the Federal Reserve System.

## II.

Pueblo Bank asserts that under the circumstances of this case, there were no presentment or transfer warranties made to Decibel and that the trial court erred in ruling to the contrary. We agree.

## A.

■ Presentment warranties in the Colorado version of the Uniform Commercial Code appear in § 4–4–208, C.R.S.1999, as follows:

(a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment . . . warrant[s] to the drawee that pays or accepts the draft in good faith that:

(1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft . . .;

(2) The draft has not been altered; and

(3) The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

As noted in the Official Comment to a similar section, § 4–3–417, C.R.S.1999, the warranty in subsection (a)(1) is only a warranty that there are no unauthorized or missing *endorsements* on the checks. Further, subsection (a)(2) does not apply because there was no alteration to the checks. Finally, there is no claim that Pueblo Bank had actual knowledge of the forged signatures, and thus subsection (a)(3) does not apply.

Indeed, as the court noted in *Payroll Check Cashing v. New Palestine Bank,* 401 N.E.2d 752 (Ind.App.1980), if the warranty that all signatures were genuine applied to a bank in the position of Pueblo Bank, the final payment doctrine contained in § 4–3–418 would be meaningless. This doctrine is of great importance in banking commerce because it creates certainty relative to which institution must bear the loss and thus avoids time consuming and expensive litigation. *See Travelers Indemnity Company v. Stedman, supra,* at 747 n. 9.

Accordingly, we hold that Pueblo Bank did not extend any presentment warranty to Decibel by returning the checks to it through the Federal Reserve System. Hence, the trial court erred in concluding that presentment warranties applied for the benefit of Decibel under the circumstances of this case.

### B.

The term "transfer" is defined in § 4–3–203(a), C.R.S.1999, as delivery by a party other than the maker of an instrument for the purpose of giving that party the right to enforce the check. And, § 4–4–207, C.R.S. 1999, contains Colorado's version of the transfer warranties of the Uniform Commercial Code. That section provides:

(a) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee . . . that:

(1) The warrantor is a person entitled to enforce the item;

(2) All signatures on the item are authentic and authorized;

(3) The item has not been altered;

(4) The item is not subject to a defense or claim in recoupment . . . ;

(5) The warrantor has no knowledge of any insolvency proceeding commenced with respect to the . . . drawer.

■ Even if we assume that a transfer is involved here, it is well established that a transfer warranty as to the genuineness of the drawer's signature does not apply for the benefit of the drawee bank. *See Bank of Glen Burnie v. Loyola Federal Savings Bank, supra,* 336 Md. at 344, 648 A.2d at 459

n. 6; *see also* 5 W. Hawkland, J.F. Leary & R. Alderman, *Uniform Commercial Code Series* § 4–207:1 n. 6 (1999). Hence, the trial court erred in relying on this section to enter judgment for Decibel.

To the extent that Decibel relies upon *Vectra Bank v. Bank Western,* 890 P.2d 259 (Colo.App.1995) as support for the judgment, we conclude that this case does not apply. Consistent with prior interpretations of the Uniform Commercial Code in other jurisdictions, the division in *Vectra* correctly applied the transfer warranties in a case involving forged *endorsements.* Here, however, the signatures of the maker have been forged.

By reason of our disposition of the above issues, it is unnecessary to address Pueblo Bank's contention that the presentment and transfer warranties are preempted by 12 C.F.R. § 229.30.

### III.

■ In support of the judgment, Decibel emphasizes the trial court's determination that Pueblo Bank acted without diligence in cashing the checks because the thief's accounts did not have sufficient funds to cover each of the items. Decibel views this determination as a finding that Pueblo Bank acted in bad faith, and it reasons that, therefore, Pueblo Bank may not rely upon the final payment rule. We conclude that additional proceedings are required to resolve those issues.

■ Generally, a court may not resolve issues pertaining to a party's good faith or lack thereof on summary judgment because this decision requires an evaluation of a party's subjective intent. *See Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946); *Ranger v. Fortune Insurance Co.,* 881 P.2d 394 (Colo.App.1994).

Further, Decibel has failed to cite any legal authority, and we find none, for the proposition that cashing the checks under the circumstances here, standing alone, is sufficient to establish bad faith on the part of Pueblo Bank. Hence, we conclude that these issues must be resolved by a trial on the

merits as disputed issues of fact. *See Smith v. Boyett,* 908 P.2d 508 (Colo.1995).

Decibel also relies upon § 4–3–406, C.R.S. 1999, of the Uniform Commercial Code which addresses negligence contributing to a forged signature. However, that issue was not presented in the trial court, and we decline to address it for the first time here based upon the limited record before us.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge CASEBOLT and Judge ROY concur.