JAMES F. MINER, Respondent, v. CHRISTOPHER REMBT, Sued as CHRISTIAN REMBT, Appellant.

Second Department, May 11, 1917.

Negligence — municipal corporations — duty of motorcycle policeman to use care when pursuing escaping automobile — injury to such officer by colliding with truck — evidence.

A police officer on a motorcycle engaged in pursuit of an automobile, the operator of which has violated the speed regulations, must use ordinary care, although the speed ordinances do not apply to him when in the performance of his duty.

Evidence in an action by such an officer for personal injuries sustained by colliding with defendant's truck at a crowded street junction while in pursuit of a speeding car and proceeding at night at the rate of thirty-five miles an hour, examined and *held*, that a verdict in favor of the plaintiff was against the weight of the evidence, and that the complaint should be dismissed.

APPEAL by the defendant, Christopher Rembt, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 20th day of October, 1916, upon the verdict of a jury for $7,500, and also from an order entered in said clerk's office on the 28th day of March, 1917, denying defendant's motion for a new trial made on the ground of newly-discovered evidence.

On December 28, 1914, the date of this casualty, plaintiff was a motorcycle police officer, engaged in enforcing speed regulations in the borough of Queens. It was about ten-

thirty P. M. The streets were well lighted. No question is made as to the lights on the cycle, or on the truck. As plaintiff cycled eastward on Myrtle avenue and had passed about four blocks easterly of the corner of Cooper avenue, he met a black touring car (which escaped identification) going westward at a rate of forty miles an hour. Plaintiff turned and started in pursuit, working his cycle up to top speed. Cooper avenue, running in a southwestern direction, intersects Myrtle avenue at an angle of about thirty-five degrees. Myrtle avenue has a double line of trolley car tracks. Cooper avenue has no car tracks, being paved with asphalt for a width of eighteen feet, with Belgian blocks along the sides. When plaintiff was near Edison place (which intersects Myrtle avenue a block eastward of the place of collision), he claims that as he looked to his right across to Cooper avenue he saw defendant's truck bound westward. Plaintiff then noticed that his own increasing speed according to his speedometer was thirty-five miles an hour. Plaintiff sounded his cycle horn, but kept gaining in speed, absorbed in looking in front after the vanishing touring car. On the north side of Myrtle avenue was a board fence eleven and one-half feet high, which shut in a view of approaching objects from a vehicle on Cooper avenue coming to the Myrtle avenue intersection. Just to the west of this board fence, with an opening of five or six feet, was a one-story office building, so that by the fence and this building the open space eastward of the curb at the Cooper avenue corner was less than twenty-five feet.

The motor provision truck which defendant drove down Cooper avenue had a speed from ten to twenty miles an hour. Defendant had seen nothing of plaintiff as he approached the corner. Observing an east-bound trolley car on the farther Myrtle avenue track, defendant slackened his speed as he came to the gutter. The motorman beckoned him to pass ahead, and defendant's truck kept on over the car tracks. As it reached the east-bound track, defendant heard a yell and then saw the motorcycle less than fifty feet off, and swerving to the left. Defendant threw out the clutch and put on the brake, but the vehicles were in contact so that plaintiff was thrown between the car tracks, sustaining injuries which were serious and permanent.

Plaintiff testified that " as I got to the corner, or near the corner, I blew the horn for him twice, for him to slacken. I got down to the corner. I was still going along at that speed when this car [the defendant's truck] shot out." Later he estimated that he was three-quarters of a block from the corner when he sounded his horn. On cross-examination he admitted a speed of from thirty-five to forty miles an hour, " around 35," at the time of the accident. It was conceded that Cooper avenue is one of the main arteries of traffic between the boroughs of Brooklyn and Queens; that Myrtle avenue was much frequented, and that this intersection is a busy corner. The verdict was $7,500.

*Edgar F. Hazleton*, for the appellant.

*Gustav Lange, Jr.* [*Harding Johnson* with him on the brief], for the respondent.

PUTNAM, J.:

The plaintiff's proposition comes to this: That in pursuit of a speeding car, this motorcycle can run at night at a speed of thirty-five miles an hour, and strike a converging truck at an acute angle from behind, and recover damages for such resulting injury. The warning rests wholly on the cyclist's horn, given sideways to a truck on a converging street, where a board fence eleven feet six inches high shuts off the plaintiff until the cycle is 100 feet off the truck's path.

No private motorcyclist could make such a claim. But motorcyclist officers assert an immunity under city ordinances. The ordinance makes a speed to exceed fifteen miles an hour *prima facie* prohibited speed. But by section 4 it is declared that this ordinance shall not apply to members of the police department when in performance of their duty. (Speed Ord. Apr. 15, 1913, §§ 1, 4, as amd. See Cosby's Code Ord. [Anno. 1914] pp. 455–457, 475, 476.)

A police officer engaged in pursuit of a fugitive car still has to use ordinary care. Can he dash along a thoroughfare at such a junction as this, and flash up behind a truck at a conceded speed of over fifty feet a second? Reckoning back from the impact only ten seconds would put plaintiff off as far as Tesla place, a block beyond Edison place. A horn

sounded in the block between Edison place and the corner would be less than four seconds before the blow. While plaintiff was hurt while in the discharge of official duty, that duty did not authorize him to ignore the rights of overtaken vehicles at such a crowded street junction. The motorcycle had no brake; its dangerous approach was masked by the fence along the north side of Myrtle avenue. The present judgment reverses the true legal liabilities, since plaintiff was reckless, ignoring defendant's rights at such intersection. Defendant was not at fault. He had no reason to suppose he would meet such disregard of his rights. The cycle horn, given at the time stated, imported no such warning. When defendant saw the plaintiff, they were already *in extremis*.

I advise to reverse as against the weight of evidence, and to direct final judgment dismissing the complaint, with costs in the court below and on this appeal.

JENKS, P. J., STAPLETON, MILLS and BLACKMAR, JJ., concurred.

Judgment reversed and final judgment unanimously directed dismissing the complaint, with costs in the court below and on this appeal.